TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
RUBEN ESCALANTE (Cal. Bar No. 244596)
SONAH LEE (Cal. Bar No. 246024)
Assistant United States Attorneys
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, CA 92501
    Telephone: (951) 276-6212; (951) 276-6924
    Facsimile: (951) 276-6202
    E-mail:    ruben.escalante@usdoj.gov
            sonah.lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>        v.<br><br>JASON DEE TAYLOR,<br><br>      Defendant. | ED CR No. 20-191-JGB<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  11/16/2021<br>Trial Time:  9:00 a.m.<br>Location:   Courtroom of the<br>            Hon. Jesus G.<br>            Bernal |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Sonah Lee and Ruben Escalante, hereby files its Trial Memorandum.

///

///

///

1   Should any legal or factual issues arise that have not been

2   addressed in this Trial Memorandum, the government respectfully

3   requests leave to submit such further memoranda as may be necessary.

4   Dated: November 12, 2021          Respectfully submitted,

5                                     TRACY L. WILKISON
                                      Acting United States Attorney
6
7                                     SCOTT M. GARRINGER
                                      Assistant United States Attorney
                                      Chief, Criminal Division
8
9                                     JERRY C. YANG
                                      Assistant United States Attorney
                                      Chief, Riverside Branch Office
10
                                      _____/s/_____
11                                    SONAH LEE
                                      RUBEN ESCALANTE
12                                    Assistant United States Attorneys

13                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES..............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   INTRODUCTION..................................................1

II.  FACTUAL SUMMARY OF THE CASE..................................1

          A.   DEFENDANT MET THE MINOR VICTIM ON SEEKING.COM AND
               COMMUNICATED ON INSTAGRAM...........................1

          B.   IN CHATS DEFENDANT ACKNOWLEDGED THE MINOR
               VICTIM'S MINOR STATUS, ARRANGED TO PAY HER FOR
               SEX, SOLICITED NUDE PHOTOGRAPHS FROM HER, AND
               TOLD HER TO NOT TELL HER FAMILY ABOUT WHAT THEY
               WERE DOING..........................................2

          C.   DEFENDANT DISCUSSED ENGAGING IN SEX ACTS WITH THE
               MINOR VICTIM AND ASKED IF HE COULD FILM HER
               PERFORMING SEX ACTS ON HIM..........................3

          D.   DEFENDANT PAID THE MINOR VICTIM FOR SEX ON TWO
               OCCASIONS...........................................5

          E.   THE MINOR VICTIM'S FAMILY REPORTED DEFENDANT AND
               POLICE SUBSEQUENTLY ARRESTED HIM; DEFENDANT
               ATTEMPTED TO COVER UP HIS MISCONDUCT................7

          F.   THE FBI HAD AN OPEN INVESTIGATION INVOLVING
               DEFENDANT WHEN THE INSTANT ALLEGATIONS AROSE........8

          G.   DEFENDANT ADMITTED TO THE CHARGED CONDUCT,
               CLAIMING IT WAS AN "ISOLATED INCIDENT"..............9

III. STATEMENT OF THE CHARGED OFFENSES AND ELEMENTS OF THE
     CHARGES.....................................................10

IV.  ESTIMATE OF THE GOVERNMENT'S CASE-IN-CHIEF AND DEFENDANT'S
     CASE-IN-CHIEF...............................................11

V.   WITNESSES THE GOVERNMENT INTENDS TO CALL....................11

VI.  LEGAL AND EVIDENTIARY ISSUES................................11

          A.   RESOLVED PRETRIAL MOTIONS..........................11

          1.   DEFENDANT'S MOTION TO DISMISS......................11

          2.   DEFENDANT'S MOTION TO STRIKE SURPLUSAGE FROM THE
               INDICTMENT.........................................12

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                        PAGE

      3.   DEFENDANT'S MOTION TO EXCLUDE UNCHARGED CONDUCT.....12

      4.   THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE IRRELEVANT EVIDENCE, DEFENSES, AND ARGUMENT........13

      B.   PENDING PRETRIAL MOTIONS...........................13

      1.   DEFENDANT'S MOTION TO EXCLUDE DEFENDANT'S INCRIMINATING STATEMENT.............................13

      2.   THE GOVERNMENT'S MOTION IN LIMINE TO BAR EVIDENCE OF M.V.'S ALLEGED OTHER SEXUAL BEHAVIOR OR PREDISPOSITION.....................................13

      C.   LAY OPINIONS OF LAW ENFORCEMENT WITNESSES..........14

      D.   INTRODUCTION OF CHILD EROTICA AND SEXUALLY EXPLICIT MATERIALS.................................15

      E.   ADMISSION OF INSTAGRAM AND SEEKING.COM MESSAGES BETWEEN M.V. AND DEFENDANT.........................16

      F.   ADMISSION OF SUMMARIES OF VOLUMINOUS RECORDS.......16

      G.   CROSS-EXAMINATION OF DEFENDANT....................17

  H.   Reciprocal Discovery..................................18

  I.   Affirmative Defenses.................................18

  J.   Judicial Notice of a Legislative Fact..................18

# **TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

Cases

<u>Ohler v. United States</u>,
    529 U.S. 753 (2000) ............................................. 17

<u>Taylor v. Illinois</u>,
    484 U.S. 400 (1988) ............................................. 18

<u>United States v. Black</u>,
    767 F.2d 1334 (9th Cir. 1985) .................................. 17

<u>United States v. Bray</u>,
    139 F.3d 1104 (6th Cir. 1998) .................................. 17

<u>United States v. Davis</u>,
    854 F.3d 601 ................................................... 10

<u>United States v. Gadson</u>,
    763 F.3d 1189 (9th Cir. 2014) .................................. 15

<u>United States v. Meyers</u>,
    847 F.2d 1408 (9th Cir. 1988) .................................. 16

<u>United States v. Miranda-Uriarte</u>,
    649 F.2d 1345 (9th Cir. 1981) .................................. 17

<u>United States v. Nelson</u>,
    285 F. App'x 491 (9th Cir. 2008) ............................... 15

<u>United States v. Oaxaca</u>,
    569 F.2d 518 (9th Cir. 1978) ................................... 16

<u>United States v. Pino-Noriega</u>,
    189 F.3d 1089 (9th Cir. 1999) .................................. 14

<u>United States v. Skeet</u>,
    665 F.2d 983 (9th Cir. 1982) ................................... 15

<u>United States v. Stearns</u>,
    550 F. 2d 1167 (9th Cir. 1977) ................................. 16

<u>United States v. VonWillie</u>,
    59 F.3d 922 (9th Cir. 1995) .................................... 14

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

Statutes

18 U.S.C. § 2422(b)...........................................1, 10, 18
18 U.S.C. §§ 1591(a)(1).........................................1, 10
California Penal Code Section 261.5................................10
California Penal Code Section 261.5(a)............................11

Rules

Fed. R. Crim. P. 16(b)(1)(A)......................................18
Fed. R. Crim. P. 16(d)(2).........................................18
Fed. R. Evid. 1006................................................16

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.  INTRODUCTION**

3        Defendant Jason Dee Taylor ("defendant") was a 40-year old man

4   who paid a then-15-year old teenager (the "minor victim" or "M.V.")

5   to have sex with him on two occasions.  Defendant asked her to prove

6   she was a minor and told her he thought her age was "kinda hot"; he

7   had sexually charged communications with her; he asked her to send

8   him nude photographs of herself for which he would pay her; he asked

9   her if he could film her performing sexual acts on him; he drove from

10  his home in San Bernardino County to the minor victim's home in Santa

11  Barbara County to take her to a hotel to have sex on two occasions;

12  he tried to cover up his misconduct by destroying evidence after the

13  minor victim's family confronted him; and he attempted to mislead the

14  Court at his initial appearance when he personally misrepresented

15  that "this was an isolated incident."  Defendant got caught when

16  M.V.'s family saw messages between them and reported defendant to the

17  authorities.  Defendant used the Internet and other means and

18  facilities of interstate commerce to accomplish the sexual

19  exploitation of M.V.

20        As set forth below, the government will establish that

21  defendant's conduct violated 18 U.S.C. §§ 1591(a)(1), (b)(2), (c) for

22  Sex Trafficking of a Minor; and 18 U.S.C. § 2422(b) for Enticement of

23  a Minor to Engage in Criminal Sexual Activity.

24  **II.  FACTUAL SUMMARY OF THE CASE**

25        **A.  Defendant Met the Minor Victim on Seeking.com and**

26            **Communicated on Instagram**

27        Defendant contacted the minor victim on the dating website

28  seeking.com, using the username, "RumbleFingers." They exchanged

messages through the messaging feature on the site and then switched to communicating via Instagram messenger, where he used the username, "Capthaze69."

**B.** **In Chats Defendant Acknowledged the Minor Victim's Minor Status, Arranged to Pay Her for Sex, Solicited Nude Photographs From Her, and Told Her to Not Tell Her Family About What They Were Doing**

The minor victim's profile on seeking.com reflected that she was 19 years old, as shown in screenshots of the same.  However, during their chats defendant asked her how old she was and stated that they would hook up regardless; the government will present screenshots of these messages.  As reflected in these messages, the minor victim told defendant that she was 16 years old, even though she was actually 15 years old at the time.  The minor victim's age did not faze defendant.  In fact, defendant wrote her, "I'll be honest.  I like your age, it's kinda hot."

Defendant and the minor victim also exchanged messages discussing establishing an arrangement where they would meet for sex and defendant would pay her $300 each week when they met.

    TAYLOR:  So tell he[1] hon what help you need

    TAYLOR:  How can I help you?

    M.V.:  money mostly :(

    TAYLOR:  How much you need hon

    M.V.:  um I don't really know, what do you think we can do

    TAYLOR:  300?

---

[1]    The misspellings and grammatical errors are recaptured here as they appear in the messages.

2

1          M.V.:  do you want to do a weekly thing or what

2          are you looking for

3          TAYLOR:  I'd be down but I want to ask what's ok

4          during the time

5          TAYLOR:  I like to kiss, oral, usually fuck twice

6          TAYLOR:  No anal or rough play

7          TAYLOR:  Unless you want it

8          TAYLOR:  And I don't wear condoms

9          TAYLOR:  In play raw

10          TAYLOR:  If that's good we can do this once a

11          week.

12  Defendant also solicited nude images from the minor victim prior to

13  meeting, for which he agreed to pay an extra $100; he did this in

14  writing as well.  Defendant also wrote her "if you can prove you[r]

15  age I'll even give a little more."

16      During their written conversation, defendant asked the minor

17  victim what her living situation was, and when the minor victim

18  responded that she lives with her mother, sisters, and a brother,

19  defendant told the minor victim, "They can't know ok."

20      **C.   Defendant Discussed Engaging in Sex Acts with the Minor**

21          **Victim and Asked If He Could Film Her Performing Sex Acts**

22          **on Him**

23      During their written communications, defendant repeatedly

24  discussed engaging in sex acts with the minor victim.  He also asked

25  if he could film her performing oral sex on him when they met.

26          TAYLOR:  Can daddy fill your mouth full of cum?

27          TAYLOR: If you dont like I wont

28          TAYLOR: I'm gentle

1    M.V.: yes you can please daddy

2    M.V.: you can be hard with me a bit

3    TAYLOR:  I won't

4    TAYLOR: You like it rough?

5    M.V.: It depends lol that's why I said a bit

6    TAYLOR: Ahh

7    TAYLOR: Im not rough

8    TAYLOR: Can I video you

9    M.V.: you don't have to, im just saying if you

10   want you can hehe

11   TAYLOR: I mean

12   TAYLOR: When I'm there

13   TAYLOR: Can I film you sucking my cock

14   TAYLOR: And riding on it

15   M.V.: yes

16   TAYLOR: ok

17                      .    .    .

18   TAYLOR: I need your nudes

19   TAYLOR: I'm so fucking hard

20   M.V.: their very fun to take, I think you'll like

21   them

22   TAYLOR: Ok

23   TAYLOR: Lots of legs spread

24   TAYLOR: I want to see you 16 yr old pussy spread

25   wide

26   M.V.: yes for you : )

27   TAYLOR: Cus daddys gonna take it

28                      .    .    .

4

TAYLOR: Put your 16 yr pussy on daddyd swollen 40

yr cock

.    .    .

TAYLOR: Can daddy see you with nothing on

TAYLOR: No bra no panties

M.V.: Okay : )

TAYLOR: And some of your pussy close, I like to

see how your pussy looks too . . .

TAYLOR: Mmm damn baby

TAYLOR: Daddy likes it . . .

TAYLOR: You are so hot

TAYLOR: I don't mind the hair

.    .    .

TAYLOR:  Wanna see my cock?

TAYLOR: Or wait lol

Defendant also made plans with the minor victim to meet up at a hotel in Santa Barbara County; this was captured in the messages as well.  Defendant lived in San Bernardino County.

**D.    Defendant Paid the Minor Victim for Sex on Two Occasions**

According to the minor victim and messages exchanged between defendant and the minor victim, on April 11, 2020, and on April 22, 2020, defendant drove to Santa Barbara County, picked up the minor victim, took her to a hotel, and paid her for sex.

///

///

///

5

1  Cell phone data confirms defendant traveled to Santa Barbara County:



16      Messages sent by defendant confirm they had sex:

17          TAYLOR: So do you enjoy the . . . you know?

18          M.V.: yesss : )

19          M.V. did you?

20          TAYLOR:  Of course

21          TAYLOR:  Did you have any orgasms?

22          TAYLOR: emoticons

23          M.V.: lol yesss a lot

24                              .     .     .

25

26          TAYLOR:  Do you enjoy the sex?  You can be honest

27          if not

28                              .     .     .

1      TAYLOR: The first time you undressed and I saw
2      your beauty I think my heart stopped
3                         .    .    .
4      TAYLOR:  I want you so bad
5      M.V.: me either
6      TAYLOR: I want to taste you again
7                         .    .    .
8      TAYLOR: I could eat you all day
9      TAYLOR:  And the feeling as slid into you . . .
10     omg . .
11                        .    .    .
12     TAYLOR:  Did you like it when I came inside you?
13     M.V.: yes alott
14                        .    .    .
15     TAYLOR: You suck dick so good
16     TAYLOR: emoticon
17     M.V.: aww thank youu I was hoping I was doing
18     good

According to the minor victim, during both of these encounters, they engaged in vaginal intercourse and oral copulation.  TAYLOR paid the victim each time they had sex.

    **E.**   **The Minor Victim's Family Reported Defendant and Police Subsequently Arrested Him; Defendant Attempted to Cover Up His Misconduct**

On or about April 16, 2020, the minor victim's family friend, A.S., whose phone the minor victim had been using to communicate with defendant, will testify that she found messages between defendant and the minor victim.  Thereafter, one of the minor victim's family

members sent defendant a message that they were going to report him to law enforcement.  In response, defendant deleted his Instagram account, but not before M.V.'s family friend took screenshots of their communications.

On the date of defendant's arrest, investigators seized phones and computers, pursuant to a search warrant.  However, the phones appeared to have been recently purchased and the computer appeared to have been recently reformatted.

F.   **The FBI Had an Open Investigation Involving Defendant When The Instant Allegations Arose**

The FBI also had an open investigation regarding defendant, which FBI Special Agent ("SA") Lisa Wall was conducting.  Notably, defendant filed a motion *in limine* to preclude this prior, uncharged conduct from being admitted into evidence.  The Court granted the motion, without prejudice.

If permitted, SA Wall will testify that the FBI investigation was prompted by a CyberTip in 2019.  Among other things, there was evidence that in 2011 defendant attempted to purchase live web cam footage involving sexual exploitation of minors from a "Philippine seller"; discussed going to the Philippines and playing with the two year old daughter of the seller; stated he "wanted to put his dick" in the seller's daughter; and discussed a live web cam show with the two year old daughter.  In 2012, there was evidence that defendant communicated with another "Philippine seller" about purchasing a seven year old from the Philippines with whom to have sex and that he later requested a five year old or younger.

The FBI investigation had not been completed when the state investigation regarding the minor victim came to the FBI's attention and the government indicted the instant case.

G.   **Defendant Admitted to the Charged Conduct, Claiming It Was An "Isolated Incident"**

On October 27, 2020, the Honorable Sheri Pym, United States Magistrate Judge, conducted defendant's initial appearance.  At the initial appearance, AUSA Peter Daulquist read the indictment to defendant.  Defendant pleaded not guilty to the charges.  After hearing argument about the issue of detention, the Court stated as follows:

> I just -- in this case, there are -- it's true
> that the defendant has, apparently, been out on
> bond for a few months and is stable in all sorts
> of ways, but I don't -- given the nature of the
> allegations here, the seriousness of the charges,
> and the victim involved and so forth, as alleged
> in this case, I don't see this as a case that's
> appropriate for bond, and so I am going to order
> that the defendant be detained.

In response, defendant asked for permission to speak, which the Court granted. Defendant stated as follows:

> This was an isolated incident.  The defendant
> [sic] lives very – he [sic] lives – the girl in
> this case lives in [Santa Barbara County], a
> little over three hours away.  I attend church
> four days a week . . .

1  **III. STATEMENT OF THE CHARGED OFFENSES AND ELEMENTS OF THE CHARGES**

2      The government charged defendant with violating 18 U.S.C.

3  §§ 1591(a)(1), (b)(2), (c), Sex Trafficking of a Minor.  The elements

4  of the offense are as follows:

5      First, defendant knowingly harbored, transported, provided,

6  obtained, maintained, or solicited M.V. to engage in a commercial sex

7  act;

8      Second, defendant knew, or was in reckless disregard of the

9  fact, that M.V. had not attained the age of 18 years and would be

10  caused to engage in a commercial sex act; and

11      Third, defendant's acts were in or affecting interstate or

12  foreign commerce.

13      Notably, if the government proves beyond a reasonable doubt that

14  the defendant had a reasonable opportunity to observe M.V., then the

15  government does not have to prove that the defendant knew or

16  recklessly disregarded that M.V. had not attained the age of 18

17  years. See Ninth Circuit Model Criminal Jury Instructions, No. 8.134A

18  (2010 ed.); 18 U.S.C. §§ 1591(a)(1), (b)(2), (c); United States v.

19  Davis, 854 F.3d 601, 604 (9th Cir. 2017

20      The government also charged defendant with violating 18 U.S.C.

21  § 2422(b), Enticement of a Minor to Engage in Criminal Sexual

22  Activity.  The elements of the offense are as follows:

23      First, defendant used a means or facility of interstate and

24  foreign commerce to knowingly persuade, induce, entice, and coerce

25  M.V. to engage in any sexual activity for which someone could be

26  charged with an offense, that is unlawful sexual intercourse with a

27  person under the age of 18 years, in violation of California Penal

28

1   Code Section 261.5;[2] and

2       Second, M.V was under the age of 18.  See Ninth Circuit Model

3   Criminal Jury Instructions, No. 8.192A (2010 ed.).

4       Notably, defendant stipulated to the interstate nexus element of

5   both charges.

## IV.   ESTIMATE OF THE GOVERNMENT'S CASE-IN-CHIEF AND DEFENDANT'S CASE-IN-CHIEF

The estimated time for the government's case-in-chief is
approximately three days, including any cross-examination.  The
government anticipates defendant will testify, which will take less
than one day.

## V.   WITNESSES THE GOVERNMENT INTENDS TO CALL

The government intends to call the following witnesses:  A.S,
Guadalupe Police Department Officer Maria G. Negreti, Santa Maria
Police Department Detective Matthew Silver, M.V., M.R. (the mother of
M.V.), Fontana Police Department Forensic Technician Brandon Canary,
Santa Maria Police Department Detective Shane Armstrong, and FBI
Special Agent Lisa Wall.

## VI.   LEGAL AND EVIDENTIARY ISSUES

### A.    Resolved Pretrial Motions

#### 1.    Defendant's Motion to Dismiss

Defendant moved to dismiss the indictment claiming that the
government's decision to prosecute defendant for the charged offenses
denied him due process and equal protection rights because the

---

[2]    California Penal Code Section 261.5(a) provides as follows:
"(a) Unlawful sexual intercourse is an act of sexual intercourse
accomplished with a person who is not the spouse of the perpetrator,
if the person is a minor. For the purposes of this section, a "minor"
is a person under the age of 18 years and an "adult" is a person who
is at least 18 years of age."

charged conduct does not require the government to establish defendant "knew" M.V. was a minor.  Defendant also claimed that the charged offenses violated the Tenth Amendment and principals of federalism because the conduct was "local conduct."  The Court denied this motion.

### 2.    Defendant's Motion to Strike Surplusage from the Indictment

Defendant moved to strike defendant's aliases set forth in the indictment and for an order precluding the government from referring to such aliases in their case in chief.  The Court denied this motion.  Accordingly, the government will present evidence about the different aliases defendant used to communicate with M.V.

### 3.    Defendant's Motion to Exclude Uncharged Conduct

Defendant moved to exclude evidence that defendant engaged in the following conduct:  (1) "[I]n November 2011, defendant communicated with 'cutierhea_14@yahoo.com' and discussed him participating in sexual activities with 'cutierhea's' 2-year old daughter and paying 'cutierhea' for allowing defendant access to the 2-year old daughter"; (2) "On August 1, 2012, defendant communicated with 'prettycharlene28@yahoo.com' where he discussed engaging in sexual activities with her 7-year old daughter and paying 'prettycharlene28' for allowing access to her children"; (3) "On December 15, 2012, defendant again communicated with 'prettycharlene28@yahoo.com' where 'prettycharlene28' discussed offering defendant several minors"; and (4) "On January 29, 2014, defendant communicated with 'marlborolights762@yahoo.com' where he communicated with the other individual and appeared to be setting up a time and payment arrangements."  The Court granted this motion,

without prejudice.  However, the government is prepared to present such evidence through the testimony of FBI Special Agent Lisa Wall if the court reconsiders its preliminary ruling.

        *4.   The Government's Motion In Limine To Preclude Irrelevant Evidence, Defenses, and Argument*

The Government filed a motion to preclude evidence and argument that (1) the relationship between defendant and M.V. was consensual; (2) M.V. was not a victim of transnational sex trafficking ring; (3) defendant was not involved in a transnational sex trafficking ring as a sex trafficker; and (4) defendant's sexual conduct with MV was purely local and should not have been charged in federal court.  The Court granted the motion.

**B.    <u>Pending Pretrial Motions</u>**

        *1.   Defendant's Motion to Exclude Defendant's Incriminating Statement*

Defendant moved to exclude defendant's incriminating statement that he made at his detention hearing.  Specifically, after being informed of his right to remain silent, read the indictment, and hearing the Court's reasons for detaining him, he made statements that support he committed the crime, he knew that M.V. was a minor, and the conduct took place in the Central District of California. The government filed an opposition to this motion.  The Court has not ruled on this motion.  If the Court denies this motion, the government will present this evidence through the testimony of FBI Special Agent Lisa Wall.

        *2.   The Government's Motion In Limine to Bar Evidence of M.V.'s Alleged Other Sexual Behavior or Predisposition*

The Government filed a motion to preclude defendant from presenting evidence of M.V.'s prior sexual behavior or any alleged

sexual predisposition.  This would include, specifically, testimony that Seeking.com is a website designed to match up "Sugar Daddies" and "Sugar Mommas" with "Sugar Babies."  Defendant opposed this motion.  The Court has not ruled on this motion.  If this motion is denied, defendant will likely seek to elicit such evidence from the government's witnesses, including from M.V.

### C. __Lay Opinions of Law Enforcement Witnesses__

Santa Barbara Police Department Detective Matthew Silver and FBI Special Agent Lisa Wall will testify about the investigation and their opinions and impressions of what they observed.  For example, this will include opinion testimony about why they believed certain evidence was important to their investigation, their conclusions about what transpired between M.V. and defendant based on their investigation, and how they identified defendant as the person they believe engaged in commercial sex acts with M.V.

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."  United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999).  Under Ninth Circuit law, opinion testimony by law enforcement officers is admissible and not necessarily expert testimony within the meaning of Rule 16(a)(1)(G).  See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995).  As the Ninth Circuit has explained, law enforcement officers' opinion testimony:

> is a means of conveying to the jury what the witness has
> seen or heard. . . . Because it is sometimes difficult to
> describe the mental or physical condition of a person, his
> character or reputation, the emotions manifest by his acts;
> speed of a moving object or other things that arise in a

day to day observation of lay witnesses; things that are of common occurrence and observation, such as size, heights, odors, flavors, color, heat, and so on; witnesses may relate their opinions or conclusions of what they observed.

United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982).  See also United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014) ("[A]n investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury.").  These law enforcement officers' opinion testimony and conclusions will be helpful to the jury; and their opinions do not require expert knowledge.  See United States v. Nelson, 285 F. App'x 491, 493-94 (9th Cir. 2008) ("The officers were in the unique position of observing both the manner in which the vehicle was driven prior to the stop and the precise location and position in which the gun was discovered, and their opinions did not require scientific, technical or other specialized knowledge.")

   D.   **Introduction of Child Erotica and Sexually Explicit Materials**

   The government intends to admit and briefly show the jury photographs of M.V. in a bra and underwear, which pictures were posted to her Seeking.com profile.  The government will also show the jury pictures of M.V. where her breasts and genital area are exposed, which defendant requested and were sent to him.  The government intends to present this evidence in a manner appropriate to its sensitive nature.

**E.**   **Admission of Instagram and Seeking.com Messages Between M.V. and Defendant**

The government intends to admit certified business records from Instagram and T-Mobile, pursuant to Federal Rule of Evidence 902(11) and 803(6).  The government provided Rule 902(11) notice to defendant on November 5, 2021.  Defendant has not objected to the authenticity of these documents.  By proceeding in this matter, the government will streamline the presentation of evidence by obviating the need for two additional witnesses to testify about the messages between defendant and M.V. set forth in the Instagram return and T-Mobile's and Instagram's subscriber information.

The government also intends to introduce photographs of the messages between defendant and M.V. over Instagram, which were taken by a law enforcement officer.  Photographs are generally admissible as evidence.  See United States v. Stearns, 550 F. 2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible).  Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  Here, the government will establish that the photographs fairly and accurately represent screenshots of the messages between M.V. and defendant.

**F.**   **Admission of Summaries of Voluminous Records**

"The proponent of a summary of 'voluminous writings' under Fed. R. Evid. 1006 must, in this Circuit, establish that the underlying materials upon which the summary is based are admissible in evidence."  United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir. 1988).  Although the underlying materials must be "admissible," they need not be "admitted" in every case.  Id.  To be admissible as

16

substantive evidence under Rule 1006, the chart must summarize the underlying materials "accurately, correctly, and in a nonmisleading manner." United States v. Bray, 139 F.3d 1104, 1110 (6th Cir. 1998). Here, the government will seek to admit a chart that summarizes messages between defendant and M.V. set forth in a voluminous search warrant return from Instagram. The underlying messages are admissible as business records, as set forth above; the subscriber information confirms the incriminating messages are from defendant; and Detective Silver will testify that he reviewed the Instagram return and that the chart reflects the same. Accordingly, this chart is admissible pursuant to Federal Rule of Evidence 1006.

### G. Cross-Examination of Defendant

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony. See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000). A defendant has no right to avoid cross-examination on matters that call into question his claim of innocence. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The scope of a defendant's waiver is coextensive with the scope of relevant cross-examination. United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

### H.   **Reciprocal Discovery**

The government has complied with its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure, and continues to do so.  The government has likewise requested all reciprocal discovery from defendant.  To date, the government has received no discovery from the defense; nor has defendant voiced an objection to the government's requests.  Accordingly, the government requests that the Court preclude any such evidence if defendant fails to comply with his discovery obligations.  See Fed. R. Crim. P. 16(b)(1)(A) (reciprocal discovery obligations); Fed. R. Crim. P. 16(d)(2) ("the court may . . . prohibit the party from introducing evidence not disclosed"); Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

### I.   **Affirmative Defenses**

Defendant has not given notice of his intent to rely on any defense of entrapment, mental incapacity, alibi, or any other affirmative defense.  Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude the defendant from asserting such a defense.

### J.   **Judicial Notice of a Legislative Fact**

As set forth above, to establish defendant violated 18 U.S.C. § 2422(b), the government must prove that defendant knowingly persuaded, induced, enticed, and coerced M.V. to engage in a sexual activity for which someone could be charged with an offense.  The government will prove that defendant's conduct violated California

Penal Code Section ("Section") 261.5.  The parties' Joint Proposed
Instruction No. 14, requests the court to instruct the jury that
Section 261.5 criminalizes sexual intercourse between a person who is
under the age of 18 and an adult, unless the minor is the spouse of
the adult.  This is an appropriate instruction because "[w]here the
court takes judicial notice of a legislative fact, the court may
simply instruct the jury to that effect."  See Ninth Circuit Criminal
Jury Instructions, No. 2.4 (2020 ed.) (Judicial Notice) (stating,
"Comment[:] . . . Where the court takes judicial notice of a
legislative fact, the court may simply instruct the jury to that
effect.")