TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
RUBEN ESCALANTE (Cal. Bar No. 244596)
SONAH LEE (Cal. Bar No. 246024)
Assistant United States Attorneys
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, CA 92501
     Telephone: (951) 276-6212; (951) 276-6924
     Facsimile: (951) 276-6202
     E-mail:    ruben.escalante@usdoj.gov
                sonah.lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. ED CR 20-191-JGB |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | |
| JASON DEE TAYLOR, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ruben Escalante and Sonah Lee, hereby files its Sentencing Position for Defendant Jason Dee Taylor.

///

///

///

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 24, 2022      Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office

    /s/
SONAH LEE
RUBEN ESCALANTE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Contents**

INTRODUCTION....................................................4

FACTUAL SUMMARY.................................................5

THE SENTENCING GUIDELINES AND THE USPO'S RECCOMENDATION.............8

GOVERNMENT'S RECOMMENDED SENTENCE: 169 MONTHS' IMPRISONMENT........9

NATURE, CIRCUMSTANCES, AND SERIOUSNESS OF THE OFFENSE...............9

DEFENDANT'S HISTORY AND CHARACTERISTICS............................11

NEED TO PROTECT THE PUBLIC, PROVIDE ADEQUATE DETERRENCE AND JUST
    PUNISHMENT, AND PROMOTE RESPECT FOR THE LAW....................12

NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES...................13

LIFETIME SUPERVISED RELEASE WITH ADDITIONAL TERMS IS APPROPRIATE...13

RESTITUTION AND VICTIM IMPACT STATEMENTS...........................14

CONCLUSION........................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendant Jason Dee Taylor ("defendant") should be sentenced to 169 months' imprisonment. This is justified by defendant's hands-on sexual exploitation of a vulnerable minor girl; the egregious nature of the crime involving two commercial sex acts and crossing over multiple counties; deviousness, including bringing the victim drugs even though she told him she did not want any; lack of remorse, including presenting a defense that blamed the victim for tricking him into believing she was not a minor; forcing the victim to endure a trial even though he did not contest the underlying facts of the case; and attempts to cover up his conduct and destroy evidence. The only way to deter defendant from committing future crimes, protect the public from his predatory behavior, and punish him for the conduct and damage he did, is to send him to and keep him in prison.

Following a four-day jury trial, on November 19, 2021, defendant was found guilty of engaging in sex trafficking in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and enticing a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2422(b).

On January 3, 2021, the United States Probation and Pretrial Services Office ("USPO") disclosed the Presentence Investigation Report ("PSR") and Recommendation Letter ("RL") for defendant. The USPO correctly calculated defendant's total offense level as 34, a criminal history category of I, and an advisory Sentencing Guidelines range of 151 to 188 months' imprisonment. The USPO recommends a sentence of 151 months' imprisonment and a lifetime term of supervised release.

4

As set forth below, the government respectfully requests that the Court sentence defendant to (a) a mid-range Guidelines term of 169 months' imprisonment; (b) a lifetime term of supervised release; and (c) a special assessment of $100. This sentence is warranted because it reflects the seriousness of the instant offense and the need for deterrence and public protection.

**FACTUAL SUMMARY**

Between April 9, 2020, and April 26, 2020, defendant, then a 40-year-old man, contacted a minor victim, then a 15-year-old teenager (the "minor victim"), on the dating website seeking.com, using the username "RumbleFingers." (PSR ¶ 8.) They exchanged messages through the messaging feature on the site and then switched to communicating via Instagram messenger, where he used the username "Capthaze69." (PSR ¶ 8.)

The messages reflect that defendant was the sexual aggressor and a sexual predator at work and that he knew the minor victim was underage. Specifically, although the minor victim's profile on seeking.com reflected that she was 19 years old, during their chats, defendant asked her how old she was and stated that they would hook up regardless. (PSR ¶ 10.) The minor victim told Taylor that she was 16 years old, even though she was 15 years old at the time. (PSR ¶ 10.)

It was defendant who solicited the minor victim to have sex with him. (PSR ¶ 10.) He persuaded the minor victim to have sex with him by offering her things such as friendship, money, and drugs. (PSR ¶ 10.) Indeed, the messages reflect that defendant asked the minor victim if she wanted to "talk about an arrangement." (Trial Exhibit 17-2.) Defendant asked her what she was "open to"; he told her he

5

was "open to everything" and he "hoped she was too." (Trial Exhibit 17-3.) When she said she was open to "a lot," he said, I'll "help you out" and asked "can you let me do anything?" (Trial Exhibit 17-4.) He messaged her over 100 times on Instagram messenger. He also used a sexually charged reference on Instagram; instead of dangling candy in front of her, he included a reference to pot, a picture of marijuana, and number "69": "capthaze69."

When he asked her for how much she would be willing to sell her 15-year-old body to him, she didn't say. He was the one who suggested $300, and she agreed. (Trial Exhibit 4-2.) He even told her that if she could prove her age, that is, if she could prove she was 16, he would give her more. (Trial Exhibit 4-8 at 4-12.) He is the one who then asked what he could do during the time he paid for sex. (Trial Exhibit 4-2.)

During their written communications, defendant repeatedly discussed engaging in sex acts with the minor victim. (PSR ¶ 11.) He also asked if he could film the minor victim performing oral sex on him. (PSR ¶ 11.) To further degrade and entice her, he asked her to send her nude images for an extra $100. (PSR ¶ 10.) To further entice, persuade, induce, and coerce her, he offered her drugs. She did what she was supposed to do and told him she did not want to have drugs because she recently quit; he brought them anyway, and she took them. (Exhibit 5-8 to 10.) His work was so masterful he even had her believing that he did not persuade her to do drugs and that she was a willing participant in the commercial sex act. (PSR ¶¶ 13, 15) (The minor victim told an officer that she smoked the substance but was not persuaded by defendant to do so).

6

Then, to make sure that he could continue to persuade, induce, entice, and coerce her, he got rid of the adults in her life. He made sure there would be no adults to protect her and keep her safe, to stand up to him, to call the authorities, to tell her that she was being naive and dangerous. He asked her about her living situation. She said she lived her with mom, sisters, and brother. To make sure he could completely isolate her from any adults, he told her, "They can't know ok." (Trial Exhibit 4-10; PSR ¶ 12.)

Ultimately, defendant and the minor victim made an arrangement where they would meet for sex and defendant would pay her $300 each week. (PSR ¶ 11.) Then, on April 11, 2020, defendant drove to Santa Barbara County, picked up the minor victim, took her to a hotel, and paid her $300 for sex. (PSR ¶ 13.) During this encounter, they engaged in vaginal intercourse and oral copulation. (PSR ¶ 13.) Taylor also provided the minor victim with a substance, which he told the minor victim was cocaine. (PSR ¶ 13.)

Then again, on April 22, 2020, Taylor drove to Santa Barbara County, picked up the minor victim, took her to a hotel, and paid her $300 for sex. (PSR ¶ 15.) During this encounter, they engaged in vaginal intercourse and oral copulation. (PSR ¶ 15.) Again, Taylor also provided the minor victim with a substance that he said was cocaine. (PSR ¶ 15.)

Fortunately, the minor victim's family friend, whose phone the minor victim had been using to communicate with defendant, found messages between defendant and the minor victim. (PSR ¶ 14.) Thereafter, one of the minor victim's family members sent defendant a message that they were going to report him to law enforcement. (PSR

7

¶ 14.)  In response, defendant tried to cover up his crime and deleted his Instagram account, but not before the minor victim's family friend took screenshots of their communications.  (PSR ¶ 14.) There was also testimony that indicated defendant bought all new phones and reformatted his computer, again, in an attempt to cover up his crime.  (DL, p. 7.)

Ultimately, defendant was arrested and indicted on federal charges.  Rather than accept responsibility for his actions, he put the minor victim through the ordeal of a trial, disputed essential elements of the government's case, and suggested the minor victim would lie to get her way and tricked him into believing she was not a minor.  In response, empowered by the adults who were back in her life and supported her, the minor victim testified in support of the government's case (her case).  As reflected by her testimony, the minor victim, a troubled teenager, clearly wanted money and was willing to do very sad things to get it, but she testified how she would have done innocent things to get it as well.  (RT 15:17-16:3.) It is true, defendant didn't "force her"; he paid her, gave her drugs, and other things she wanted so that she would have sex with him.  (RT 13:21-15:6.)  She was only 15 years old; she was the child; defendant was the adult, the 40-year-old adult.

The jury recognized the depravity of defendant's conduct and found him guilty of sex trafficking and enticing a minor to engage in criminal sexual activity.

**THE SENTENCING GUIDELINES AND THE USPO'S RECCOMENDATION**

The government agrees with the USPO's calculations of a total offense level of 34 and a Criminal History Category of I.  The Probation Officer's offense level calculation is as follows:

| Base Offense Level: | 30 | U.S.S.G. § 2G1.3(a)(2) |
|---|---|---|
| Specific Adjustments: Use of a computer | +2 | U.S.S.G. § 2G1.3(b)(3)(B) |
| Specific Adjustments: Commission of a sex act | +2 | U.S.S.G. § 2G1.3(b)(4) |
| Total: | 34 | |

(PSR ¶¶ 21-39.) Defendant falls within Criminal History Category I, with no known criminal history. (PSR ¶ 41.) As correctly set forth in the PSR, the resulting Guidelines range is 151 to 188 months' imprisonment. (PSR ¶ 92.) The USPO recommends a sentence of 151 months' imprisonment and a lifetime term of supervised release. (Dkt. 154.)

**GOVERNMENT'S RECOMMENDED SENTENCE: 169 MONTHS' IMPRISONMENT**

The government recommends a mid-range Guidelines sentence of 169 months' imprisonment, a lifetime term of supervised release, and a special assessment of $100. Such a sentence is sufficient, but not greater than necessary, to satisfy the statutorily prescribed sentencing objectives of 18 U.S.C. § 3553(a).

A sentence of 169 months is appropriate because of the nature, circumstances, and seriousness of the offense, defendant's history and characteristics, need to protect the public, and need to provide adequate deterrence and just punishment.

**NATURE, CIRCUMSTANCES, AND SERIOUSNESS OF THE OFFENSE**

The government's recommendation is driven by the Guidelines range, which captures the nature, circumstances, and seriousness of the offense.

First, the Guidelines consider that defendant used a computer to accomplish his crime and actually accomplished his crime. There was no way defendant could have met the minor victim without the use of

9

the Internet and computer; she lived across multiple counties with no connection to defendant. Thus, an enhancement based on the use of a computer is warranted. Similarly, defendant did not simply sit in the privacy of his room when he exploited the minor victim; rather, he groomed her, drove to her, met her, had sex with her, paid her, and did it again. Thus, an enhancement based on having sex with the minor victim is warranted as well. The Guidelines take into account defendant's lack of criminal history.

Second, this was not a "statutory rape" case, a "mistaken age" case, or anything remotely close to such circumstances. Defendant and the minor victim were not two people who were involved in a sexual, romantic relationship, but one happened to be underage. The minor victim was not a fully developed young woman with whom defendant had sex in the heat of the moment, only to find out she was underage. Rather, this was a case where defendant looked for, found, and exploited a teenager who was willing to sell her body for money because that is what he wanted. He got what he wanted.

Finally, although defendant attempts to characterize the minor victim as a willing participant, the way he enticed, persuaded, inducted, and coerced her to have sex with him was by offering her things she could not resist, such as friendship, understanding, money, and drugs. Notably, at one point, she even refused his offer for drugs because she recently overcame an addiction; he gave them to her anyway. He did this twice. Defendant's conduct was so depraved that he even had the minor victim believing that he did not need to convince or force her to have sex with him. Defendant continues to contend that he did not need to overcome her will. This was an

egregious crime, wrought with danger and physical and emotional harm to a real victim.

### DEFENDANT'S HISTORY AND CHARACTERISTICS

Defendant's history and characteristics further justify a Guidelines sentence. Although the indicted case involved only one minor victim, the FBI was already investigating defendant when it learned defendant sexual exploited the minor victim.

Specifically, on May 16, 2019, Yahoo/Oath Holdings submitted a cyber tip to the National Center for Missing and Exploited Children that one of its user accounts "jtaylor7227," later identified as defendant, was suspected of conducting illegal activities using the Yahoo platform. (PSR ¶ 8.) These activities generally involved live streaming child exploitation material using Yahoo email accounts and Yahoo messenger platform and receiving payments for such content streaming. (PSR ¶ 8, fn. 1.) The cyber tip was forwarded to the FBI, who began investigating defendant for the sexual exploitation of minors. (PSR ¶ 8.) While investigating defendant, the FBI learned that he had been arrested for different criminal conduct involving the minor victim in Santa Barbara County. (PSR ¶ 8.)

Defendant also was not an individual whose vices made him an unproductive member of society. Rather, defendant was an educated, privileged family-man. He used such characteristics to mask his conduct. Defendant's lack of remorse is also indicative of his lack of character. Indeed, the defense that defendant presented demonstrated he lacks any remorse for his conduct. He essentially claimed that the victim tricked him into believing she was not a minor and that she was a willing participant. This defense, although not legally cognizable and belied by the facts, demonstrates he does

11

not think he did anything wrong. This explains why defendant chose to require the victim and her family to endure a trial.

### NEED TO PROTECT THE PUBLIC, PROVIDE ADEQUATE DETERRENCE AND JUST PUNISHMENT, AND PROMOTE RESPECT FOR THE LAW

A significant mid-range 169-month sentence would also deter him from committing future crimes against children, protect the community from his conduct for the time he is in prison, promote respect for the law, and offer a just punishment.

First, although defendant would like everyone to think this was an "isolated" incident and an aberration, it was not. It involved a calculated scheme that manifested itself in two commercial sexual acts with a minor. Indeed, when the family of the minor victim confronted him, he took steps to cover his tracks, including reformatting his computer and purchasing new phones.

Second, in terms of a just punishment for the offense, the government informed the defense about its position regarding the exposure defendant faced. Notably, 169 months' imprisonment is significantly below the total exposure (i.e., life) for the two offenses of which the jury convicted defendant. The victim here will be marred by defendant's conduct for the rest of her life.

Finally, defendant poses a significant risk to the community and a strong risk for recidivism. Defendant's comments show a dangerous attraction toward underage girls that will not have an outlet following his conviction. A sentence of 169 months' imprisonment followed by lifetime supervised release would adequately instill in defendant a respect for the law and sufficiently deter him from committing child exploitation crimes in the future. A 169-month

sentence will also give defendant ample time to reconsider his actions in light of the consequences

**NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES**

The court's sentence should seek to minimize sentencing disparities among similarly-situated defendants. Using the correctly calculated sentencing guidelines as a starting point for sentencing helps accomplish this goal. *See, e.g.*, *United States v. Treadwell*, 593 F.3d 990, 1011-12 (9th Cir. 2010). Since the United States' requested sentence is within the applicable guidelines range, such a sentence would avoid unwarranted sentencing disparities among similarly situated defendants.

**LIFETIME SUPERVISED RELEASE WITH ADDITIONAL TERMS IS APPROPRIATE**

The government agrees with the USPO's recommendation that supervised release be imposed for life. As Congress has explained when amending 18 U.S.C. § 3583,

> Studies have shown that sex offenders are four time more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as offenders age . . . While any criminal's subsequent reoffending is of public concern, preventing sexual offenders from re-offending is particularly important, given the irrefutable and irreparable harm that these offenses cause victims and the fear they generate in the community.

H.R. Rep. 107-527. Supervised release is the only way to monitor defendant's dangerousness to the community, particularly given his lack of remorse and failure to come to terms with the wrongfulness and despicability of his conduct. Accordingly, particularly if the

Court sentences defendant to less than a Guidelines sentence, a lifetime term of supervised release is appropriate.

**RESTITUTION AND VICTIM IMPACT STATEMENTS**

The government received victim impact statements for this case, which it forwarded to the USPO. As recognized by the USPO, restitution is mandatory in this case pursuant to 18 U.S.C. § 1593.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to (a) a mid-range Guidelines term of 169 months' imprisonment; (b) a lifetime term of supervised release; (c) a special assessment of $100.